1

2

3

4                      UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6                            SAN JOSE DIVISION

7

8    DEBORAH HOWINGTON, et al.,                Case No.  24-cv-05684-VKD

              Plaintiffs,
9
                                              **ORDER DENYING PLAINTIFFS'**
         v.                                   **MOTION FOR TEMPORARY**
10                                            **RESTRAINING ORDER**

11   TAIWAN SEMICONDUCTOR                      Re: Dkt. No. 50
     MANUFACTURING CO., LTD., et al.,
12
              Defendants.
13

14          On April 4, 2025, plaintiffs Deborah Howington, James Perry, Elena Huizar, Lacey

15   Bostick, Modupe Adesemoye, Marc Popisteanu, Nicole Carrier, Michael Winn, Edward

16   McKinley, Wendy Lara Prieto, Luis Zepeda, Phillip Sterbinsky, and Samuel Langley (collectively,

17   "plaintiffs") moved for a temporary restraining order ("TRO").  Dkt. No. 50.[1]  Plaintiffs seek an

18   order requiring defendants Taiwan Semiconductor Manufacturing Co. Ltd., TSMC North

19   America, TSMC Technology, Inc., TSMC Arizona Corporation, and TSMC Washington, LLC

20   (collectively, "TSMC") to rescind a March 18, 2025 decision terminating the employment of

21   putative class member Michelle Bernardo and to immediately reinstate Ms. Bernardo's

22   employment in the human resources ("HR") department.[2]  *See* Dkt. No. 50 at ECF 2.

23          On April 4, 2025, the Court issued an interim order.  Dkt. No. 52.  Plaintiffs responded to

24

25   [1] The Court defers ruling on the parties' respective associated sealing motions (Dkt. Nos. 49, 57),
     until the period for briefing on plaintiffs' sealing motion is closed.  *See* Dkt. No. 58.  However,
26   information disclosed in this order reflects matters for which the Court has determined that no
     sealing is warranted.
27
     [2] Although the record indicates that Ms. Bernardo was employed by TSMC Arizona Corporation,
28   plaintiffs' motion seeks injunctive relief as to all defendants.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    that order on April 7, 2025.  Dkt. No. 53.  Pursuant to a further court order, TSMC filed its

2    opposition to the TRO motion on April 11, 2025, and the Court held a hearing on the TRO motion

3    on April 15, 2025.  Dkt. Nos. 54, 56, 59.  Upon consideration of the moving and responding

4    papers, as well as the oral arguments presented, the Court denies the motion.[3]

5    **I.    BACKGROUND**

6            In this putative class action, plaintiffs allege employment discrimination by TSMC.

7    According to the operative first amended complaint ("FAC"), TSMC engages in an "intentional

8    pattern and practice of employment discrimination against individuals who are not of East Asian

9    race, not of Taiwanese or Chinese national origin, and who are not citizens of Taiwan or China,

10   including discrimination in hiring, staffing, promotion, and retention/termination decisions."  Dkt.

11   No. 20 ¶ 1.  Additionally, plaintiffs allege that "TSMC routinely subjects non-East Asians

12   (including those who are not of Taiwanese or Chinese descent) to a hostile work environment

13   where verbal abuse, gaslighting, isolation, and humiliation is common, and oftentimes leads to the

14   constructive discharge of these employees."  *Id*. ¶ 2.  Plaintiffs assert class claims under 42 U.S.C.

15   § 1981 for disparate treatment on the basis of race and citizenship, as well as for a hostile work

16   environment (based on race), and under Title VII, 42 U.S.C. § 2000e-2 for disparate treatment

17   based on race and national origin, disparate impact based on race and national origin, as well as

18   for a hostile work environment (based on race and national origin).  Certain plaintiffs also assert

19   individual claims for retaliation under 42 U.S.C. § 1981 and/or 42 U.S.C. § 2000e-2.  *See id*.

20   ¶¶ 183-223.

21           The original putative class action complaint was filed on August 22, 2024 by plaintiff

22   Deborah Howington.  Dkt. No. 1.  After defendants advised that they planned to move to dismiss

23   the complaint, the parties stipulated to set or extend certain deadlines, including for the filing of an

24   amended pleading, stating that they were doing so in an effort to avoid motions practice.  Dkt.

25   Nos. 18, 19.  On November 8, 2024, Ms. Howington filed the operative FAC, adding twelve

26

27   _____

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally

28   adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 7, 13, 25, 42.

United States District Court
Northern District of California

1    additional named plaintiffs.  Dkt. No. 20.  On January 13, 2025, TSMC answered the FAC and

2    asserted affirmative defenses.  Dkt. No. 23.

3        On February 5, 2025, plaintiffs sent to TSMC a draft proposed second amended complaint

4    ("SAC").  *See* Dkt. No. 50-1 ¶ 2; *see also* Dkt. No. 56 at ECF 8.  Among other things, the SAC

5    proposes to add Ms. Bernardo as a named plaintiff with respect to certain class claims and to add

6    an individual retaliation claim for Ms. Bernardo (and several others) under 42 U.S.C. § 1981.  *See*

7    Dkt. No. 37-2.[4]  In a section of the pleading titled "Ms. Bernardo's Experience," the proposed

8    SAC describes Ms. Bernardo's allegations regarding not only her own experiences of harassment,

9    bullying, and poor treatment at TSMC, but also the purported treatment and experiences of other

10   employees.  *See id.* ¶¶ 200-220.  TSMC says that after reviewing the proposed SAC, it became

11   concerned that Ms. Bernardo may have violated TSMC's policies by disclosing outside of the

12   company highly confidential information about other TSMC employees, which TSMC believes

13   she acquired solely by virtue of her position as a senior employee in the HR department.  *See* Dkt.

14   No. 56 at ECF 8; Dkt. No. 56-1 ¶¶ 4, 5; Dkt. No. 56-2 ¶¶ 3, 4; *see also* Dkt. No. 33-1 ¶¶ 2-5.

15       TSMC says that it began an internal investigation of Ms. Bernardo around February 17,

16   2025, and initiated an interview with her on February 21, 2025.  Dkt. No. 49-6 ¶ 6; Dkt. No. 56 at

17   ECF 9; Dkt. No. 56-2 ¶ 5.  Ms. Bernardo requested to have her attorney, Mr. Kotchen (who also is

18   plaintiffs' counsel of record in the present action), at the interview.  TSMC agreed.  Mr. Kotchen

19   was present with Ms. Bernardo at her rescheduled interview on March 11, 2025.  *See* Dkt. No. 49-

20   6 ¶¶ 6, 8; Dkt. No. 50-1 ¶ 3; Dkt. No. 56-2 ¶¶ 5, 6.  Meanwhile, the record indicates that TSMC

21   placed Ms. Bernardo on paid administrative leave pending completion of its investigation.  Dkt.

22   No. 56-1 ¶ 6; Dkt. No. 56-2 ¶ 5; *see also* Dkt. No. 49-6 ¶ 7; Dkt. No. 50-1 ¶ 8, Ex. 4 (Dkt. No. 50-

23   5 at ECF 2).  After completing the investigation, TSMC terminated Ms. Bernardo's employment

24   on March 18, 2025.  *See* Dkt. No. 50-1 ¶ 5, Ex. 1 (Dkt. No. 49-3); Dkt. No. 56-1 ¶ 7.  According

25   to TSMC, Ms. Bernardo's employment was terminated because she violated several TSMC

26

27   [4] Plaintiffs have moved for leave to file their proposed SAC naming Ms. Bernardo and fourteen
     others as plaintiffs asserting claims for themselves and on behalf of the putative classes.  Dkt. No.
28   37.  The Court has not decided that motion.

1    policies, including "(1) disclosing confidential information to external parties; (2) disclosing other

2    parties' confidential information without their consent; (3) accessing company information not

3    required to perform assigned tasks; and (4) failure to cooperate with an investigation." Dkt. No.

4    56-2 ¶ 9.

5    　　　　Plaintiffs contend that Ms. Bernardo was fired in retaliation for engaging in protected

6    activity related to the present litigation. On that basis, they now move on her behalf for an order

7    requiring TSMC to rescind her termination and to reinstate her employment. *See* Dkt. No. 50 at

8    ECF 2.

9    **II.    LEGAL STANDARD**

10    　　　　The standard for issuing a temporary restraining order is identical to the standard for

11    issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d

12    832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp.

13    1320, 1323 (N.D. Cal. 1995). Preliminary injunctive relief is an "extraordinary remedy" that is

14    "never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24

15    (2008). Rather, an injunction is a matter of equitable discretion and is "an extraordinary remedy

16    that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at

17    22. The moving party bears the burden of demonstrating that "he is likely to succeed on the

18    merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

19    balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. at 20. In

20    *Alliance for the Wild Rockies v. Cottrell*, the Ninth Circuit held that the "serious questions" sliding

21    scale approach survives *Winter*. 632 F.3d 1127, 1134-35 (9th Cir. 2011). Thus, a court may grant

22    a request for a preliminary injunction if a plaintiff demonstrates that there are serious questions

23    going to the merits and that the balance of hardships tips sharply in the plaintiff's favor, "so long

24    as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is

25    in the public interest." *Id*. at 1135.

26    **III.    DISCUSSION**

27    　　　　For several reasons, plaintiffs have not demonstrated that they are entitled to their

28    requested preliminary injunctive relief.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1

**A.      Standing/Authority for Requested Injunction**

2         As a preliminary matter, plaintiffs have not demonstrated their standing to obtain, or the

3   Court's authority to grant, their requested preliminary injunctive relief, which they seek solely for

4   Ms. Bernardo individually.  *See* Dkt. No. 50-9.  Ms. Bernardo is not a party to this action.  And

5   while plaintiffs maintain that Ms. Bernardo is a putative class member (of class(es) that have yet

6   to be certified), plaintiffs' TRO motion is premised on Ms. Bernardo's individual claim for

7   retaliation that is not in the case.  *See Nat'l Ctr. for Immigrants Rights, Inc. v. I.N.S.*, 743 F.2d

8   1365, 1371 (9th Cir. 1984) (absent class certification, preliminary injunctive relief may properly

9   cover only named plaintiffs); *Zepeda v. U.S. I.N.S..*, 753 F.2d 719, 727 (9th Cir. 1983) (in a case

10  where class certification was denied without prejudice, remanding to limit injunction "to apply

11  only to the individual plaintiffs unless the district judge certifies a class of plaintiffs.").  *Kirby v.*

12  *Kindred Healthcare Operating, LLC*, No. 5:19-cv-00833-JLS, DFM, 2020 WL 4639493 (C.D.

13  Cal. May 1, 2020), on which plaintiffs principally rely, is inapposite.  Contrary to plaintiffs'

14  suggestion, the court in *Kirby* did not grant relief to putative class members by rescinding their

15  individual settlement agreements; rather, the court left it to those individuals to void their own

16  agreements, if they chose to do so.  *See id*. at *6.  *Kirby* does not support this Court's authority to

17  grant relief to putative class members, at the request of the named plaintiffs.  Plaintiffs' other cited

18  (non-binding) cases addressed preliminary injunctive relief apparently sought by the named

19  plaintiffs for themselves *and* on a class basis, and do not compel a contrary conclusion.  *See Just*

20  *Film, Inc. v. Merchant Servs., Inc.*, 474 F. App'x 493, 495 (9th Cir. 2012) (affirming preliminary

21  injunction where plaintiff showed "that a class-wide injunction is necessary to remedy the alleged

22  class-wide harm."); *Chhoeun v. Marin*, 306 F. Supp. 3d 1147, 1164 (C.D. Cal. 2018) (granting

23  preliminary injunctive relief requested by named petitioners and a subset of the putative class).

24         Plaintiffs argue that Rule 23(d) supplies the necessary authority for this Court to grant their

25  request for preliminary injunctive relief.  On its face, Rule 23(d) permits courts to issue orders

26  managing the conduct of class actions, including those that "determine the course of the

27  proceedings," "giv[e] appropriate notice," "impose conditions on the representative parties or on

28  intervenors," "require that the pleadings be amended to eliminate allegations about representation

United States District Court
Northern District of California

1    of absent persons," or that "deal with similar *procedural* matters."  Fed. R. Civ. P. 23(d)(1)

2    (emphasis added).  Plaintiffs have presented no authority supporting their assertion that Rule 23(d)

3    vests the Court with authority to grant preliminary injunctive relief going to the merits of the

4    action.

5            Nor is the All Writs Act, 28 U.S.C. § 1651, a basis for the Court's authority to grant

6    plaintiffs' requested injunction.  Even assuming that the All Writs Act applies here, "injunctive

7    relief under the All Writs Act is to be used sparingly and only in the most critical and exigent

8    circumstances," and only "if the legal rights at issue are indisputably clear."  *Brown v. Gilmore*,

9    533 U.S. 1301, 1302 (2001) (citations and internal quotation marks omitted).  Plaintiffs have not

10   demonstrated that their motion presents "the most critical and exigent circumstances."  For the

11   reasons discussed below, on the record presented the legal rights at issue are not "indisputably

12   clear."

13           **B.      Likelihood of Success on the Merits**

14           Even if there was no question regarding plaintiffs' standing or the Court's authority to

15   grant their requested injunction, plaintiffs have not demonstrated a likelihood of success on the

16   merits of Ms. Bernardo's proposed individual claim for retaliation.  Section 1981 encompasses

17   employment-related retaliation claims.  *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 452-57

18   (2008); *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1006-07 (9th Cir. 2011).  To establish a

19   § 1981 retaliation claim, as would be the case under Title VII,[5] a plaintiff must show (1) that she

20   engaged in a protected activity, (2) that her employer subjected her to a materially adverse

21   employment action, and (3) a causal link exists between the protected activity and the adverse

22   action.  *See Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003) (elements of Title

23   VII retaliation claim).  A claim for unlawful retaliation under Title VII may arise under two

24   clauses: the opposition clause, which makes it unlawful to retaliate against an employee who "has

25   opposed any practice made an unlawful employment practice by this subchapter," and the

26

27   [5] In their respective briefs, the parties focus largely on Title VII employment standards.  The Court does the same in this order.  *See Manatt v. Bank of America, N.A.*, 339 F.3d 792, 797 (9th Cir. 2003) (recognizing "that those legal principles guiding a court in a Title VII dispute apply with

28   equal force in a § 1981 action.").

1    participation clause, prohibiting retaliation against any employee who has "made a charge,

2    testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under

3    this subchapter."  42 U.S.C. § 2000e-3(a); *see also Crawford v. Metro. Gov't of Nashville &*

4    *Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009).

5             For present purposes, plaintiffs and TSMC principally dispute whether Ms. Bernardo's

6    conduct was protected activity.  In the TRO motion, plaintiffs identify Ms. Bernardo's protected

7    activity as "seeking to participate in this lawsuit and by filing a Charge of Discrimination with the

8    EEOC against TSMC."  They further state that "[a]s part of that protected activity, it was

9    necessary for Ms. Bernardo to disclose information supporting her allegations in the lawsuit to her

10   counsel."  Dkt. No. 50 at 16-17.  At the motion hearing, plaintiffs clarified that Ms. Bernardo's

11   protected activity was sharing information with her counsel to advance the discrimination claims

12   in this lawsuit—information which plaintiffs admit included confidential personnel information

13   about other TSMC employees that Ms. Bernardo knew of or learned about by virtue of her

14   position in the HR department.  *See* Dkt. No. 59.  TSMC states that it has policies prohibiting the

15   sharing of TSMC's confidential information outside the company, including a Proprietary

16   Information and Inventions Agreement that defines "Confidential" or "proprietary" information to

17   include "Employment and Personnel information," which is, in turn, defined to include "National

18   ID numbers, names, addresses, Telephone numbers, compensation, specific capabilities, medical

19   files and information, employment evaluations of TSMC personnel, employee training material(s),

20   hiring and termination information, and information related to stock ownership."  Dkt. No. 56 at

21   ECF 8 (citing Dkt. No. 50-1, Ex. 3 (secs. 6.1, 6.1.5); Dkt. No. 33-1 ¶¶ 2-5 & Ex. 1).  TSMC

22   maintains that Ms. Bernardo's disclosure of other TSMC employees' confidential personnel

23   information is a violation of TSMC's policies and cannot constitute protected activity.

24           To determine whether an employee's conduct constitutes protected activity, the Ninth

25   Circuit (among others) employs a balancing test.  That test requires courts to balance the statutory

26   purpose "to protect persons engaging reasonably in activities opposing discrimination, against

27   Congress' equally manifest desire not to tie the hands of employers in the objective selection and

28   control of personnel."  *O'Day v. McDonnell*, 79 F.3d 756, 763 (9th Cir. 1996) (cleaned up;

United States District Court
Northern District of California

1    citations omitted).  "An employee's opposition activity is protected only if it is reasonable in view

2    of the employer's interest in maintaining a harmonious and efficient operation."  *Id*. (quotations

3    and citations omitted); *see also Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 726 (6th Cir.

4    2008) ("The analysis of a participation claim does not generally require a finding of

5    reasonableness, as opposed to the requirement that oppositional conduct be reasonable.  But when

6    confidential information is at issue, a reasonableness requirement is appropriate.").

7            Plaintiffs argue that Ms. Bernardo will be able to prove that TSMC retaliated against her

8    by firing her for her "protected participation activity" in seeking to join the present lawsuit as a

9    named plaintiff and filing an EEOC charge against the company.  Dkt. No. 50 at 16-17.  Noting

10    that the Fourth Circuit recognizes that Title VII's participation clause "offers more capacious

11    protection [than Title VII's opposition clause] for conduct in connection with Title VII

12    proceedings," *Netter v. Barnes*, 908 F.3d 932, 938-939 (4th Cir. 2018), plaintiffs argue that Ms.

13    Bernardo's disclosure of confidential information to counsel is part and parcel of her protected

14    participation activity.  Dkt. No. 50 at 16-17.  To be clear, retaliation against an employee for

15    engaging in conduct falling under Title VII's participation or opposition clauses is unlawful.  *See*

16    42 U.S.C. § 2000e-3(a).  Indeed, TSMC acknowledges as much and says that it regularly trains its

17    employees and managers on the company's non-retaliation policy.  *See* Dkt. No. 56-1 ¶ 2.  But

18    whether Ms. Bernardo's conduct might be characterized as "participation" or "opposition," the law

19    provides that there are limits to what constitutes protected activity under Title VII, and by

20    extension § 1981.  *See O'Day*, 79 F.3d at 763 (concluding that plaintiff did not engage in

21    protected activity when he "committed a serious breach of trust, not only in rummaging through

22    his supervisor's office for confidential documents, but also in copying those documents and

23    showing them to a co-worker. . . .  In balancing an employer's interest in maintaining a

24    'harmonious and efficient' workplace with the protections of the anti-discrimination laws, we are

25    loathe to provide employees an incentive to rifle through confidential files looking for evidence

26    that might come in handy in later litigation."); *Niswander*, 529 F.3d at 727 (concluding that

27    plaintiff did not engage in protected activity in producing confidential documents to counsel).

28    *Netter* does not hold the contrary.  *See Netter*, 908 F.3d at 939, 940 (stating that illegal conduct

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    does not constitute protected activity under either the opposition or protection clauses, and

2    concluding that plaintiff's "unauthorized review and duplication of confidential personnel files did

3    not constitute protected opposition or protected activity," particularly where plaintiff had access to

4    "civil discovery procedures without any demonstrated need to unlawfully review or copy

5    confidential personnel information.").

6         On the record presented, the Court cannot say that plaintiffs have shown a likelihood of

7    success on Ms. Bernardo's proposed retaliation claim.  Plaintiffs submit Ms. Bernardo's

8    declaration in which she attests that TSMC terminated her employment without proceeding

9    through a progression of steps required by company policy.  *See* Dkt. No. 49-6 ¶ 5.  TSMC

10   counters with the declaration of Rene Perez-Cabrera, an HR manager who managed Ms. Bernardo

11   and attests that "TSMC Arizona's progressive discipline policy . . . allows for reasonable company

12   discretion to terminate an employee immediately for a serious violation of policy."  *See* Dkt. No.

13   56-1 ¶¶ 4, 7; *see also id*. ¶ 2 & Ex. A (Dkt. No. 56-1 at ECF 11-12).

14        With respect to Ms. Bernardo's disclosure of what plaintiffs admit included confidential

15   personnel information about other TSMC employees, Mr. Perez-Cabrera avers that Ms. Bernardo,

16   in her position as a senior employee in the HR department, was privy to "much confidential

17   information and sensitive information, including information related to complaints and personnel

18   conflicts."  Dkt. No. 56-1 ¶ 4.  Mr. Perez-Cabrera further states that among the documents

19   (identified by TSMC's investigator) that Ms. Bernardo accessed were those that Mr. Perez-

20   Cabrera states "Ms. Bernardo did not have a work purpose to access, namely engineer evaluations

21   from previous years."  *Id*. ¶ 5.  During TSMC's investigative interview, Ms. Bernardo herself

22   noted the importance of keeping such information confidential.  *See, e.g.*, Dkt. No. 57-3 (Transcr.

23   at 59:3-22).  While plaintiffs seem to contend that TSMC's investigative interview of Ms.

24   Bernardo provides "direct evidence" of unlawful retaliation (*see* Dkt. No. 50 at 17), the interview

25   transcript indicates that Ms. Bernardo was not forthcoming and initially did not answer or refused

26   to answer a number of questions that appeared legitimately related to TSMC's investigation into

27   whether or not she improperly disclosed confidential information outside of TSMC, including

28   whether there is an HR folder that only HR employees can access; whether or not she shared

1    confidential personnel information about other TSMC employees with her attorney or anyone else

2    outside of TSMC; and why she accessed certain files in February and March 2025. *See, e.g.,* Dkt.

3    No. 57-3 (Transcr. at 26:19-23; 28:17-22; 30:4-22; 45:6-46:24; 65:9-15; 89:13-22; 90:7-15; 91:2-

4    92:3; 92:7-93:5). As these are matters that plaintiffs readily disclosed and discussed with the

5    Court at the April 15, 2025 hearing (without waiving any privilege or other protection), it is not

6    clear how the interview transcript aids plaintiffs' arguments regarding a likelihood of success on

7    the merits of Ms. Bernardo's proposed retaliation claim. Courts have recognized that providing

8    confidential information to an attorney "is less problematic" than disclosure of such information to

9    others. *See Niswander*, 529 F.3d at 727. However, the record presented indicates that the

10   circumstances and reasons for Ms. Bernardo's termination are strongly contested and are not

11   limited to her disclosure of confidential employee information to her attorney. On this record, the

12   Court cannot find that Ms. Bernardo's disclosure of confidential TSMC employee information

13   constituted participation activity or reasonable opposition activity, or that there is a causal link

14   between any protected activity and her termination.

15           **C.      Irreparable Harm**

16           Plaintiffs have not established that Ms. Bernardo will suffer irreparable harm in the

17   absence of preliminary relief. Ms. Bernardo attests to her loss of income while she attempts to

18   secure other employment and the impact that loss of earnings will have on her ability to pay the

19   tuition to complete her doctoral program or to pay for medical bills. She also expresses concern

20   that word of her termination "will exacerbate" other employees' fears about "getting fired or

21   forced out due to purported 'performance' concerns" if they speak out against mistreatment. *See*

22   Dkt. No. 49-6 ¶¶ 11-16.

23           "An irreparable harm is one that cannot be redressed by a legal or equitable remedy

24   following trial." *Optinrealbig.com, LLC v. Ironport Sys., Inc*., 323 F. Supp. 2d 1037, 1050 (N.D.

25   Cal. 2004) (citing *Public Util. Comm'n v. FERC*, 814 F.2d 560, 562 (9th Cir. 1987)). Generally,

26   economic injury is not irreparable because monetary damages are an adequate remedy. *Rent-A-*

27   *Center, Inc. v. Canyon Television & Appliance Rental, Inc*., 944 F.2d 597, 603 (9th Cir. 1991).

28   The Ninth Circuit has recognized that injury going beyond economic harm, such as "deleterious

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1    effect on the exercise of [Title VII] rights by others" and "the chilling effect of retaliatory activity

2    can constitute irreparable harm[.]"  *Garcia v. Lawn*, 805 F.2d 1400, 1405 (9th Cir. 1986).

3    However, Ms. Bernardo's assertions regarding non-economic injury are speculative.  While she

4    expresses concern that "the reason for [her] termination . . . will get out and . . . will spread

5    quickly throughout TSMC" (Dkt. No. 49-6 ¶ 16), there is no evidence that any chilling effect as

6    described in *Garcia* has occurred.  Mr. Perez-Cabrera avers that "TSMC Arizona does not disclose

7    to other employees the names of individuals who have been terminated for confidentiality

8    violations."  Dkt. No. 56-1 ¶ 8.  Indeed, it appears that *plaintiffs* disclosed Ms. Bernardo's

9    termination in the first instance when they filed their TRO motion.  Although Ms. Bernardo also

10   voices a concern that "TSMC has damaged [her] reputation by publicly accusing [her] of having

11   violated [her] confidentiality obligations in this case" (Dkt. No. 49-6 ¶ 12), there is no evidence

12   that Ms. Bernardo has not obtained other employment for that reason.  Mr. Perez-Cabrera attests

13   that "[i]f any prospective employer were to inquire about Ms. Bernardo, TSMC Arizona's HR

14   Department would only disclose her dates of employment and no further information."  Dkt. No.

15   56-1 ¶ 8.

16          Accordingly, plaintiffs have not established irreparable harm warranting the issuance of a

17   TRO.

18          **D.      Balance of the Equities**

19          "Courts must balance the competing claims of injury and must consider the effect on each

20   party of the granting or withholding of the requested relief."  *Winter*, 555 U.S. at 24.  Plaintiffs

21   argue, in conclusory fashion, that the "balance of equities plainly favors Ms. Bernardo as both she

22   and putative class members will suffer irreparable harm if Ms. Bernardo's termination is allowed

23   to stand."  Dkt. No. 50 at ECF 26.  Conversely, plaintiffs assert that there could be no injury to

24   TSMC if Ms. Bernardo's employment is reinstated, adding that she disclosed documents only to

25   her counsel and that any allegations TSMC finds especially sensitive have been sealed in this

26   litigation.[6]  *See* Dkt. No. 50 at ECF 27; *see also* Dkt. No. 59.  Noting that Ms. Bernardo's position

27

28   [6] Plaintiffs suggest that TSMC timed Ms. Bernardo's termination to occur immediately after the
     March 18, 2025 initial case management conference "to avoid Court scrutiny" of the termination.

1    as a senior employee in the HR department was one "that required mutual trust and confidence,"

2    TSMC argues that her reinstatement would be unworkable for both TSMC and for Ms. Bernardo.

3    TSMC states that Ms. Bernardo's allegations indicate that she no longer has any trust or

4    confidence in the company.  For its part, TSMC says that it believes Ms. Bernardo committed a

5    serious breach of trust by disclosing the confidential personnel information of other employees.  If

6    she were to be reinstated, TSMC expresses concern about the practicality of managing Ms.

7    Bernardo's work and duties and the company's confidentiality policies going forward.  Dkt. No.

8    56 at ECF 19-20.

9         For the reasons discussed above, the Court finds that plaintiffs have not shown irreparable

10   harm warranting the issuance of a TRO.  Additionally, under the circumstances presented, the

11   Court finds that requiring TSMC to reinstate Ms. Bernardo to the very position of trust that the

12   company claims she breached would indeed impose a burden on TSMC.  Accordingly, plaintiffs

13   have not shown that the balance of equities tips sharply, or otherwise, in Ms. Bernardo's favor.

14        **E.      Public Interest**

15        While plaintiffs correctly note that the public has an interest in the enforcement of civil

16   rights laws (*see* Dkt. No. 50 at ECF 27), so too does the public have an interest in the enforcement

17   of policies protecting the privacy of third-party employees' personnel information.  *See O'Day*, 79

18   F.3d at 763 (noting that while antidiscrimination laws protect conduct "contest[ing] an employer's

19   discriminatory practices[,] it is not an insurance policy, a license to flaunt company rules[.]").  As

20   discussed above, the record presented indicates that the circumstances and reasons for Ms.

21   Bernardo's termination are fiercely contested, and it is not clear that the public interest

22   demonstrably favors one side or the other with respect to Ms. Bernardo's retaliation claim.

23   Accordingly, the Court cannot find that plaintiffs' requested injunction weighs in the public's

24   interest.

25   ///

26   ///

27

28   *See* Dkt. No. 50 at ECF 27.  That observation is beside the point, as the merits are generally not
     addressed at such conferences.  In any event, plaintiffs' assertion is speculative.

United States District Court
Northern District of California

1    **IV.    CONCLUSION**

2        For these reasons, plaintiffs' motion for a temporary restraining order is denied.

3        **IT IS SO ORDERED.**

4    Dated: April 18, 2025

5

6                                                   Virginia K. DeMarchi

7                                                 United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

13