UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEBORAH HOWINGTON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TAIWAN SEMICONDUCTOR MANUFACTURING CO., LTD., et al., <br><br> Defendants. | Case No. 24-cv-05684-VKD <br><br> **ORDER RE JULY 23, 2025 DISCOVERY DISPUTE RE PLAINTIFFS' RFPS 5, 12-15, 20, AND 22-26** <br><br> Re: Dkt. No. 83 |

The parties ask the Court to resolve their dispute regarding several of plaintiffs' document requests. Dkt. No. 83. The Court finds this dispute suitable for resolution without oral argument. Civil L.R. 7-1(b).

For the reasons explained below, the Court orders TSMC to produce documents responsive to RFPs 13, 14, 15, and 22, as directed below, and orders the parties to confer further regarding production of documents responsive to RFP 12. The Court will not require TSMC to produce documents responsive to RFPs 5, 20, 23, 24, 25, and 26 at this time.

**I.     BACKGROUND**

In this putative class action, plaintiffs allege that defendants Taiwan Semiconductor Manufacturing Co. Ltd., TSMC North America, TSMC Technology, Inc., TSMC Arizona Corporation, and TSMC Washington, LLC (collectively, "TSMC" or "defendants") engage in an "intentional pattern and practice of employment discrimination against individuals who are not of East Asian race, not of Taiwanese or Chinese national origin, and who are not citizens of Taiwan

or China,[1] including discrimination in hiring, staffing, promotion, and retention/termination decisions." Dkt. No. 75 ¶ 1.  Additionally, plaintiffs allege that "TSMC routinely subjects non-East Asians (including those who are not of Taiwanese or Chinese descent) to a hostile work environment where verbal abuse, gaslighting, isolation, and humiliation is common, and oftentimes leads to the constructive discharge of these employees." *Id*. ¶ 2.  Plaintiffs assert class claims under 42 U.S.C. § 1981 for disparate treatment on the basis of race and citizenship, as well as for a hostile work environment (based on race), and under Title VII, 42 U.S.C. § 2000e-2 for disparate treatment based on race and national origin, disparate impact based on race and national origin, as well as for a hostile work environment (based on race and national origin).  *See id*. ¶¶ 347-380.  Certain of the named plaintiffs also assert individual claims for relief.

As pertinent to this discovery dispute, plaintiffs ask TSMC to produce documents responsive to the following 11 document requests:

> RFP 5: Documents and communications relating to your application for, receipt of, and spending of CHIPS Act funding, including but not limited to your application for CHIPS Act funding, diversity plan, communications with the government, and internal communications regarding the same.
>
> RFP 12: For employees located in the U.S. during the relevant time period, produce all performance reviews, performance review scores, performance improvement plans/corrective review plans, any objections or complaints by employees concerning performance, performance review scores, performance improvement plans/corrective review plans, promotions, terminations, or constructive discharge.
>
> RFP 13: All business plans and regularly created reports (e.g., monthly, quarterly, or yearly reports) concerning workforce demographics (including by race, national origin, citizenship, or visa status), visas, PERM hiring, green cards, localization, diversity efforts, hiring for U.S. positions, staffing U.S. positions, appraisal scores, promotions, performance reviews, discipline, or attrition (including both voluntary and involuntary attrition).
>
> RFP 14: The following documents concerning your U.S. affirmative action and diversity efforts: (1) any affirmative action

---

[1] For simplicity, the Court refers simply to "non-East Asian" and "not East Asian" to represent the members of the class(es) to which the second amended complaint refers.

2

plans and analyses, (2) data used to create the plans or analyses, and (3) communications concerning affirmative action or diversity.

RFP 15: Documents and ESI reflecting any reports or demographic data provided to any state or federal equal employment opportunity agency, including but not limited to the U.S. Equal Employment Opportunity Commission.

RFP 20: Documents sufficient to show, by year, your revenue, margins, and payroll for your business (1) in the United States, and (2) worldwide.

RFP 22: All ESI reflecting discriminatory, derogatory, or disparaging remarks or statements based on an individual or group's race, national origin, citizenship, or visa status, including statements to the effect that Americans or U.S. citizens are "stupid," "lazy," "slow," inferior, or the like.

RFP 23: All ESI concerning employee workplace injuries or death at the workplace including all reports and investigations of the same.

RFP 24: The following documents relating to complaints or internal grievances lodged by your applicants and/or current or former employees in the U.S. concerning race, national origin, citizenship, TSMC's use of visas/visa workers, discrimination, the use of Chinese or Mandarin in the workplace, working conditions, safety (including unsafe working conditions), verbal abuse, harassment, sexual harassment, assault, employee training in Taiwan, living accommodations in Taiwan, TSMC's hostile work environment, and employee resignations/constructive discharge: (1) the complaints or grievances, (2) communications concerning the complaint or grievance, (3) any materials created during any subsequent internal investigation stemming therefrom, and (4) any materials filed or submitted in any subsequent agency action, litigation, arbitration, or mediation.

RFP 25: All exit interviews with employees working for TSMC in the U.S. where the departing employee raised complaints or concerns regarding discrimination, a hostile work environment at TSMC, unfair treatment, or safety/unsafe working conditions.

RFP 26: All documents exchanged between you, any federal or state government entity, or a third party (excluding your counsel) concerning any government entity's investigation of or inquiry into: (1) your U.S. visas practices, PERM hiring, or green card applications, (2) race, national origin, or citizenship discrimination, or (3) safety violations or potential dangerous working conditions, such investigations or inquiries concerning Occupational Safety and Health Administration standard or other

1          safety standards as well as investigations or inquiries concerning the
           handling of chemicals.

2  Dkt. No. 83-1 at ECF 10, 11, 13-14.

## II. DISCUSSION

As a general matter, a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Plaintiffs argue that they are "entitled to broad discovery . . . to substantiate their pattern-or-practice claims, and the ESI sought is proportional to the needs of the case as the discovery is seclusively in TSMC's control, TSMC has the resource to produce it as a $66 billion (in revenues) company, and the ESI is critical to resolving the class claims." Dkt. No. 83 at 1. Plaintiffs suggest that any purported burden can be addressed by application of suitable search terms and identification of custodians, and that privacy concerns can be address by invoking the applicable provisions of the protective order. *Id.* Citing the "tremendous breadth" of plaintiffs' documents, and the "nature of the information sought," TSMC objects to some requests on that ground that plaintiffs seek discovery of documents that are not relevant to any claim or defense, and to others on the ground that the requests should be limited to address issues of burden and privacy. *Id.* at 4-7.

The Court addresses each disputed document request or set of related document requests below.

### A. RFP 5: CHIPS Act application and funding

Plaintiffs assert that in order for TSMC to received funding under the CHIPS Act, TSMC was required to submit a "diversity plan" demonstrating that it would hire and retain a diverse workforce. Dkt. No. 83 at 2. Plaintiffs contend that the discovery it seeks will show that TMSC has not complied with this diversity plan. Plaintiffs also say that, to the extent TMSC defends against plaintiffs' claims in this action by asserting that a "skill shortage" in the United States requires it to have a "non-diverse" workforce, TSMC's statements in this diversity plan will likely

4

contradict any such defense. *Id.* TSMC responds that whether it made "diversity" commitments as a condition of receiving CHIPS Act funding, and whether it complied with those commitments, is irrelevant to whether TSMC engaged in a pattern and practice of employment discrimination, as plaintiffs allege. *Id.* at 4-5. In particular, TSMC points out that it has not asserted that its hiring and retention practices are impacted by a "skills shortage" in the United States. *Id.* at 5.

The Court agrees with TSMC that its application for, receipt of, and spending of CHIPS Act funding is not relevant to any claim or defense in the case. Plaintiffs do not seek discovery of these documents to show what TSMC's practice *is*, but rather to show that TSMC *also* breached a commitment to a U.S. government agency. The Court is not persuaded that whether TSMC committed to a U.S. government agency that it would employ a "diverse" workforce, and whether it complied with that commitment, has any bearing on whether TSMC engages in a pattern or practice of discrimination against individuals who not East Asian. Similarly, whether TSMC received CHIPS Act funding, and the amount of that funding, is also irrelevant to any claim or defense in the case. However, if and when TMSC contends that its hiring and retention of U.S. workers is impacted by the lack of necessary skills among U.S. workers, then representations made by TSMC in its CHIPS Act application and related communications may well become relevant.

On the present record, the Court denies plaintiffs' request for an order compelling production of documents responsive to RFP 5.

### B.     RFP 12:  Employee performance records

Plaintiffs seek all performance records for all of TSMC's U.S. employees during the relevant period. Dkt. No. 83 at 2. TSMC argues that it should only be required to produce the performance records for the named plaintiffs, at least as a first step. *Id.* at 5-6.

In this action, plaintiffs allege a company-wide pattern and practice of discrimination in hiring, promotion, and actual or constructive termination of employees based on race, national origin, and/or citizenship. Plaintiffs' theory of liability does not appear to rely on the existence of an express discriminatory policy (although it may yet discover such a policy), so much as many individual instances of discrimination from which it contends a factfinder may reasonably infer the

5

existence of a discriminatory pattern or practice disfavoring non-East Asians. Presumably, plaintiffs seek discovery of all employees' performance records because they propose to investigate and marshal evidence of the alleged disparities in how TSMC treats East Asian employees and non-East Asian class members.[2]

Records that allow a plaintiff to develop statistical evidence showing disparities in the employment decisions at issue are "unquestionably relevant" in a disparate treatment action. *Diaz v. Am. Telephone & Telegraph,* 752 F.2d 1356, 1362-1363 (9th Cir. 1985); *see also Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 339-340 (1977) (discussing statistical evidence in pattern or practice cases). However, meaningful statistical evidence must be tethered to, among other things, the challenged employment decisions and the relevant comparators. *See, e.g., Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307-309 (1977).

The parties appear to have made no effort to figure out which records are sufficient to permit the necessary statistical analysis. On the one hand, plaintiffs' demand for all performance records of all employees across all of TSMC's U.S. locations, regardless of position, employment decision, or decision maker, and without any attention to the relevant variable (e.g. East Asian versus not East Asian), does not seem reasonable or particularly informative, and would presumably require the production of multiple-year records for thousands of employees.[3] On the other hand, while TSMC must promptly produce the named plaintiffs' performance records (as it has already proposed to do), such production is clearly insufficient to address plaintiffs' legitimate need for evidence that will permit it to identify disparities in TSMC's treatment of East Asian employees and non-East Asian class members. TSMC's concerns about employee privacy are not sufficient to entirely defeat plaintiffs' legitimate need for records that will permit a statistical analysis, when the privacy concerns likely can be adequately addressed by invoking the provisions of the protective order, as well as by other means, such as producing information using unique

---

[2] If plaintiffs seek discovery of all performance records so that they may rummage through them for "personal experiences" that "[bring] the cold numbers convincingly to life," *Teamsters*, 431 U.S. at 339, the Court will not permit a fishing expedition through TSMC's performance records for this purpose.

[3] Such a request is not *per se* proportional just because TSMC has billions of dollars in revenue.

6

United States District Court
Northern District of California

1  employee identifiers and omitting sensitive private information that is not relevant to plaintiffs'
2  inquiry.
3       For RFP 12, the parties must confer further regarding an appropriate methodology and
4  criteria for plaintiffs' discovery of relevant performance records other than those of the named
5  plaintiffs. The parties may wish to consider a sampling approach. *See, e.g., Briggs v. Adel*, No.
6  18-cv-2684-PHX (EJM), 2020 WL 4003123, at *9-10, *18 (discussing appropriate scope of
7  pattern-or-practice discovery and sampling methodology). In addition, the parties must confer
8  further about appropriate means of protecting the privacy of employee performance records.

### C. RFP 13: Business plans and regularly created reports

It is not clear whether TSMC currently objects to any portion of RFP 13. The Court has reviewed the request and the parties' cursory discussion of it the discovery dispute letter. Dkt. No. 83 at 3, 6. The request appears to seek relevant information that would not be unduly burdensome for TSMC to produce.

Accordingly, the Court orders TSMC to produce all documents responsive to RFP 13, for the relevant time period.

### D. RFPs 14 and 15: EEO-1 data

It is also not clear whether TSMC currently objects to any portion of RFPs 14 and 15. Plaintiffs assert: "TSMC now agrees . . . to produce the underlying [affirmative action plan] data, but still refuse to produce the underlying EEO-1 data." Dkt. No. 83 at 3. TSMC states that it will produce "any and all EEO-1 Component 1 Reports submitted to the U.S. Equal Employment Opportunity Commission during the putative class period," *id.* at 6, but TSMC does *not* commit to producing the underlying data on which its EEO-1 reports are based.

EEO-1 Component 1 requires certain employers to self-report data about their employees based on records the employer maintains about its employees. Thus, TSMC's commitment to produce the reports does not appear to encompass production of the underlying data. TSMC does not argue that production of the underlying data would be unduly burdensome, nor does it otherwise object to producing it.

The Court has reviewed RFP 15. That request does not clearly call for the production of

7

1  "underlying data"; rather, it asks TSMC to produce "[d]ocuments and ESI *reflecting* any reports or demographic data *provided to* any state or federal equal employment opportunity agency." If TSMC produces all reports or demographic data it provided to the EEOC, as it has committed to do, that production would appear to satisfy the full scope of RFP 15.

### E. RFP 20: TSMC financial information

Plaintiffs argue that discovery of TSMC's annual revenues, margins, and payroll information is relevant to "show the size of TSMC's growth in the U.S. . . . and is also relevant to punitive damages . . . ." Dkt. No. 83 at 3. TSMC responds that discovery of this information is not pertinent to class certification, and it should be deferred to a later date. *Id.* at 6.

The Court agrees that the discovery of TSMC's financial information is not relevant to any matter bearing on class certification. And while the Court has not formally bifurcated discovery between class certification and other matters, the Court has admonished the parties to focus on the discovery they need to be ready for class certification. The Court expects the parties to heed that admonishment. Plaintiffs' request for an order compelling production of documents responsive to RFP 20 is denied at this time, without prejudice.

### F. RFP 22: Disparaging remarks regarding non-East Asians

Plaintiffs appear to demand production of any and all remarks or statements made by anyone at TSMC that could be considered discriminatory or disparaging based on "an individual or group's race, national origin, citizenship, or visa status." They suggest that any "burden concerns" can be addressed by using search terms and custodians. Dkt. No. 83 at 3. TSMC responds that a search for responsive documents should begin with the supervisors of the named plaintiffs, and if that search yields evidence of disparaging remarks, the parties can consider expanding the search to other custodians. *Id.* at 6.

As drafted, RFP 22 is overbroad. While plaintiffs are correct that disparaging remarks by an employer may indicate discriminatory bias, "stray remarks" by an employee's co-workers, who neither supervise the employee nor are in a position to make any relevant employment decisions, have very limited evidentiary value. *See, e.g., Cordova v. State Farm Ins. Companies*, 124 F.3d 1145, 1149 (9th Cir. 1997) (contrasting strong evidence of discriminatory animus with "stray

remarks"). In the absence of any reasonable alternative proposal from plaintiffs, the Court finds TSMC's proposal acceptable, at least as a starting point. TSMC must identify named plaintiffs' supervisors; these supervisors will be the custodians whose materials must be searched for documents responsive to RFP 22.

### G.     RFPs 23 and 26

Plaintiffs argue that they require "[a]ll ESI concerning employee workplace injuries or death at the workplace including all reports and investigations of the same," because several plaintiffs have alleged that they were subjected to unsafe working conditions and retaliated against for reporting those safety concerns, and that they were treated differently than East Asians with respect to these issues. Dkt. No. 83 at 3. TSMC objects on the ground that the discovery is burdensome and not relevant, as there is no allegation that non-East Asian class members worked in different locations or under different conditions than TSMC's East Asian employees. *Id.* at 6-7.

Unhelpfully, the parties do not cite to any pertinent portions of the operative complaint that might assist the Court in resolving this dispute. However, having reviewed the second amended complaint, the Court notes that it contains specific allegations about unsafe working conditions for construction workers and workers generally at TSMC Arizona (Dkt. No. 75 ¶¶ 54, 85, 180, 187, 241, 246-248, 252-254, 258-260, 280, 287-289, 299, 321, 327, 336); a physical assault against one named plaintiff by a Taiwanese trainer at TSMC Arizona (*id.* ¶ 278); unsafe working conditions observed by one named plaintiff at TSMC in Taiwan (*id.* ¶¶ 267-268); and unsafe living conditions experience by one named plaintiff while training in Taiwan (*id.* ¶ 131). While the second amended complaint includes conclusory allegations that non-East Asian employees were subjected to worse conditions than East Asian employees, all of the non-conclusory allegations are made in the context of the named plaintiffs' claims that they were subject to retaliation and/or constructive discharge for reporting the safety concerns they observed. The allegations do not support the broad company-wide discovery plaintiffs demand in RFPs 23 and 26.

Although certain documents within the scope of RFPs 23 and 26 may be relevant to some named plaintiffs' individual claims, on the present record, the Court denies plaintiffs' request for an order compelling production of all documents responsive to these requests.

9

### H. RFPs 24 and 25

Plaintiffs argue that RFPs 24 and 25 seek documents that are relevant to their allegations that TSMC engages in a pattern or practice of discrimination based on race, national origin, and/or citizenship, and that they require these materials to develop evidence that TSMC's discrimination was both intentional and pervasive. Dkt. No. 83 at 4. TSMC responds that it should only be required to produce the performance records for the named plaintiffs, at least as a first step. *Id.* at 7.

RFP 24, quoted above, asks TSMC to produce all complaints and grievances, related communications, investigation materials, and litigation and dispute-related materials for complaints and grievances of U.S. applicants and employees concerning the following subjects: (1) race, (2) national origin, (3) citizenship, (4) TSMC's use of visas/visa workers, (5) discrimination, (6) the use of Chinese or Mandarin in the workplace, (7) working conditions, (8) safety (including unsafe working conditions), (9) verbal abuse, (10) harassment, (11) sexual harassment, (12) assault, (13) employee training in Taiwan, (14) living accommodations in Taiwan, (15) TSMC's hostile work environment, and (16) employee resignations/constructive discharge. For RFP 25, plaintiffs additionally demand "all exit interviews" where a departing employee raised complaints or concerns regarding discrimination of any type, a hostile work environment, unfair treatment of any type, or unsafe working conditions. The Court is not persuaded that plaintiffs are entitled to discovery of all records relating to any complaint or grievance that concerns, for example, *any* employee resignation or *any* instance of verbal abuse or sexual harassment, or *any* exit interview that raised concerns about any "unfair treatment" or "discrimination". Apart from abbreviated references to the proposition that evidence of other similar complaints and grievances, besides those made by the named plaintiffs, may be used to support a claim of unlawful discrimination, plaintiffs do not explain how the extraordinarily broad discovery they seek here will assist them in satisfying the requirements of Rule 23. Do plaintiffs hope to identify additional instances where applicants or employees complained of disparate treatment based on their status as non-East Asians, or do they expect to develop statistical evidence that will reflect that non-East Asians complained disproportionately about all/some of

10

these subjects? And for any or all such complaints, do plaintiffs really require all related communications, investigation materials, and litigation or dispute-related materials? As with RFP 12, plaintiffs' discovery demand is not sufficiently tethered to the class claims asserted and is not limited to the evidence they reasonably require to support those claims.

On the present record, the Court denies plaintiffs' request for an order compelling production of all documents responsive to RFPs 24 and 25.

### III. CONCLUSION

TSMC must produce documents responsive to RFPs 13, 14, 15, and 22 as it committed to do in the joint discovery dispute letter or as otherwise directed in this order. TSMC need not produce documents responsive to RFPs 5, 20, 23, 24, 25, and 26 at this time. The parties must confer further regarding TSMC's production of documents responsive to RFP 12, as directed above, and shall file a status report advising of their agreed or respective proposals for such production by **September 19, 2025**.

**IT IS SO ORDERED.**

Dated: August 29, 2025

*Virginia K. DeMarchi*
Virginia K. DeMarchi
United States Magistrate Judge

11